GERTRUDE ABRAMS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 799-68. Filed November 12, 1969.

*Carl J. Mooslin*, for the petitioner.
*Marion Malone*, for the respondent.

FAY, *Judge:* Respondent determined deficiencies of $128,137.64 and $96,722.91 in petitioner's Federal income taxes for taxable years 1963 and 1964, respectively.

The issue primarily before the Court is whether petitioner filed a valid joint return for each of the years in question.

Some of the facts were stipulated, and the stipulation of facts and exhibits attached thereto are found accordingly.

Petitioner was a resident of Los Angeles, Calif., at the time her petition herein was filed.

Petitioner was born on February 8, 1898, in New York City. Thus, during the years in controversy she was 65 and 66 years old, and at the time of trial she was 71 years of age. She was married to the late Benjamin Abrams (hereinafter referred to as Benjamin) for a period of 43 years until his sudden death on March 22, 1965. His lifetime occupation had been in the garment industry as a salesman and manufacturer of women's apparel.

During the years of her marriage petitioner never engaged in any business or occupation. She also did not assist her husband in his business known as Sugar and Spice. She was at times responsible, however, for paying from a checking account the rent as well as other expenses of the family.

During the years in question petitioner's husband conducted, without his wife's knowledge, a second business which was unincorporated and known as Abrams Co. Her husband used Abrams Co. to obtain large amounts of money under false pretenses. Petitioner did not receive any direct or indirect benefit from these funds. She never saw her husband displaying large sums of money. He would travel on the road for periods ranging between 3 weeks and 3 months. Petitioner did not learn of her husband's embezzlement activities until after his death.

For the taxable year 1963 petitioner's husband filed a joint Federal income tax return which he signed both for himself and for petitioner. The return included his income from Sugar and Spice, as well as certain interest income. The interest was in part from a savings account which petitioner had been maintaining in her name alone during her approximately 28 years of residence in California. She had accumulated approximately $6,000 or $7,000 in that account. Upon request from her husband, petitioner advised him as to the amount of interest which she earned during the preceding year. The joint return for 1963 claimed exemptions for both petitioner and her husband.

Soon after Benjamin's death petitioner found a notice from B. E. Savage (hereinafter referred to as Savage) which had been mailed to Benjamin. Savage operates an income tax preparation service. The

notice advised Benjamin that the deadline for filing income tax returns for taxable year 1964 was approaching.

After telephoning Savage, petitioner went to his office. During the course of their discussion Savage learned that petitioner had been 65 years old in the year 1963. Thus, she was entitled to certain additional tax benefits. He recommended that she file an amended income tax return for 1963 to obtain a refund.

Savage prepared the 1964 return for petitioner based upon the information she gave him and his records of Benjamin's returns for prior years. Savage completed the return and signed it on April 8, 1965. Petitioner filed it on April 15, 1965. The return was prepared as a joint return with the heading, "Benjamin (Deceased 3/22/65) & Gertrude." The box designated "Occupation" was marked "Salesman" and the "Filing Status" was noted as being a joint return. Exemptions were claimed for both spouses. The income of both spouses was included in the 1964 return.

On or before March 18, 1966, petitioner filed two Forms 843 (Claims for Refund) in which she claimed refunds of $260.28 and $331.25 for the taxable years 1963 and 1964, respectively. Both claims designated the taxpayers as "Benjamin (Deceased 3/22/65) & Gertrude Abrams." Both claims were signed by petitioner alone. Amended returns accompanied each claim. Petitioner personally signed the amended return for 1964 but not the amended return for 1963.

Petitioner was not acting under duress or coercion at the time she filed the foregoing claims for refund. Her only reasons for doing so were an expectation of receiving at least $590 as a refund of Federal income taxes.

Submitted with the foregoing claims for refund were two "Statement(s) of Claimant to Refund Due on Behalf of Deceased Taxpayer." In reply to questions whether an executor or administrator has been or will be appointed for the estate of the decedent, petitioner replied, "No."

Each of the returns for 1963 and 1964, as well as the amended returns for such years, shows a tax computed upon the basis of tax rates applicable to joint returns. Under the community property laws of California, petitioner had more than $600 of income, even excluding the funds embezzled by her late husband during the years in issue. She did not file a separate return for 1963.

An administrator was appointed for the estate of Benjamin sometime between the filing of the amended returns on March 18, 1966, and the issuance of the notice of deficiency on November 21, 1967. The administrator has not attempted to disavow the joint return for 1964 filed by petitioner.

In the statement attached to his notice of deficiency, respondent states that petitioner had additional unreported income in the amounts of $191,700 and $165,700 for 1963 and 1964, respectively.

OPINION

The sole issue for decision is whether petitioner is liable in 1963 and 1964 for certain unreported amounts which her late husband had embezzled without her knowledge.

It is settled that embezzled funds are income to the recipient. *James* v. *United States*, 366 U.S. 213 (1961). In the case at bar, respondent seeks to tax the funds to the embezzling husband's widow.

A husband's earnings from his personal efforts during the marriage are community property under the law of the State of California.[1] The wife's interest in community property in that State is a present, existing, and equal interest with that of her husband, during the continuance of the marriage. For purposes of Federal income taxation, each spouse is equally liable for payment of the tax on his or her respective equal share of the community income. This liability is fixed and definite. It is not a means of splitting income which may be voluntarily chosen or elected to minimize taxes. The wife may not, at her option, return one-half of the community income; she must do so. *United States* v. *Malcolm*, 282 U.S. 792 (1931) ; *Marjorie Hunt*, 22 T.C. 228 (1954).

Respondent proceeds primarily on the premise that petitioner filed joint returns with her late husband for the years involved.[2] Under section 6013(d)(3) their liability is joint and several if a joint return is filed.[3] As for the year 1963, it is respondent's reasoning that although petitioner did not sign her name to the original return for 1963 she tacitly consented to her husband's filing a joint return for such year. As for the joint return for 1964, which petitioner herself filed, respond-

---

[1] The recent case of *Carmen Ramos,* T.C. Memo. 1969–157, presents a factual pattern analogous to the case at bar.

[2] Respondent advances an alternative theory. He contends that the embezzled funds are community income under the State law of California. Thus, petitioner is liable for deficiencies on one-half of the embezzled funds regardless of whether valid joint returns were filed for the years in issue. Petitioner has not carefully considered respondent's alternative theory. The reason may be that petitioner's assets are far less than the total deficiencies, or even one-half thereof.

[3] All references herein to "section" are to the Internal Revenue Code of 1954.

SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE.

(a) JOINT RETURNS.—A husband and wife may make a single return jointly of income taxes under subtitle A, even though one of the spouses has neither gross income nor deductions, except as provided below :

\* \* \* \* \* \* \*

(d) DEFINITIONS.—For purposes of this section—

\* \* \* \* \* \* \*

(3) if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several.

ent contends the return is valid under section 6013 and that petitioner did not sign said return under duress. Respondent therefore concludes that petitioner is liable in full for the deficiencies resulting from the amounts which her late husband embezzled during the years in issue and did not report on his Federal income tax returns.

Usually both husband and wife sign a joint return. Under some circumstances, however, one spouse can sign as agent for the other. *W. L. Kann*, 18 T.C. 1032 (1952), aff'd. 210 F. 2d 247 (C.A. 3, 1953), certiorari denied 347 U.S. 967 (1954).

In the instant case we agree with respondent that petitioner tacitly consented to her late husband's filing of the joint return for 1963. In deciding that petitioner tacitly consented to Benjamin's signing her name to the return, we have looked to several factors. Most importantly, petitioner had sufficient income, without even considering the embezzled funds, in 1963 to file a separate return and never did so. *Irving S. Federbush*, 34 T.C. 740 (1960), affirmed per curiam 325 F. 2d 1 (C.A. 2, 1963). Her income included interest from a savings account as well as her one-half share of the community income from Sugar and Spice.[4]

Petitioner testified at the trial that she was not aware of the Federal income tax. This testimony stretches credulity. Petitioner is an intelligent woman more than 60 years of age and in sound mental condition. Her husband annually requested information regarding the amounts of interest accruing in her savings account for use in preparing their annual income tax return.

In reaching our conclusion we have also taken cognizance of section 6013(b)(1), which provides that if a deceased spouse has filed a separate return only his executor or administrator can file a joint return following his death. Section 1.6013–2(a)(3) of the respondent's regulations states, "Thus, where no executor or administrator has been appointed, a joint return cannot be made under section 6013(b)." When petitioner filed a claim for refund for 1963 and attached a purported amended joint return, together with an affidavit that no executor or administrator had been appointed, we believe she impliedly affirmed that the original return was a joint return rather than being only the husband's own separate return.

As for the year 1964, petitioner disavows her liability on the grounds that she signed the return under duress. Admittedly, the return is a valid joint return on its face.

Soon after Benjamin's death, petitioner visited the office of Savage, who had previously prepared her husband's Federal income tax

---

[4] Petitioner stated that the savings account consisted of funds held in trust for her children. Petitioner has not carried her burden of establishing that the interest earned on the savings account should not be taxed to herself.

returns. Based on records which petitioner brought to his office, Savage prepared and signed the return. He then delivered the return to petitioner who did not sign and file the return until several days later. Petitioner was not under duress when she signed the 1964 return. *Irving S. Federbush, supra.*

To reflect respondent's concession for 1962,

*Decision will be entered under Rule 50.*