DAVID HERMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Herman v. Commissioner
Docket No. 7998-76.
United States Tax Court
T.C. Memo 1979-30; 1979 Tax Ct. Memo LEXIS 497; 38 T.C.M. (CCH) 119; T.C.M. (RIA) 79030; January 22, 1979, Filed Robert B. Kroner and Harvey R. Poe, for the petitioner. Steven I. Klein, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioner's Federal income tax in the amount of $ 31,236.36 for the taxable year 1972. Due to concessions the only issues for our decision are: (1) Whether the Federal income tax return filed by petitioner for the taxable year 1972 constitutes a joint return under section 6013, Internal Revenue Code of 1954; [1] and (2) Whether respondent is estopped from challenging *498 the joint status of petitioner's return filed for the taxable year 1972. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated by this reference. Mr. David Herman, herein referred to as petitioner, resided at Livingston, New Jersey, at the time of the filing of his petition in the instant case. He filed his Federal income tax return for the taxable year 1972 with the Internal Revenue Service at Newark, New Jersey. Petitioner and Celia Herman were married on January 14, 1945. Petitioner filed joint Federal income tax returns with his wife for the taxable years 1945 through 1952. He prepared the returns and Mrs. Herman signed the returns at the request of petitioner. In 1951 and 1952 Mrs. Herman experienced serious mental disorders and on December 23, 1953, she entered the Essex County Hospital Center (herein hospital) for treatment. The hospital is an institution for the treatment of mental disease. On January 20, 1954, the Essex County Juvenile and Domestic Relations Court ordered the commitment of Mrs. *499 Herman to the hospital until a final hearing could be conducted to determine her mental condition. Following this order of the court Mrs. Herman was adjudicated insane on February 1, 1954, and by the language of the adjudication she was ordered to remain at the hospital until her reason was restored. The hospital characterized her mental condition as paranoid schizophrenia. Mrs. Herman remained at the hospital as a patient for approximately 23 years and was released by the hospital on July 1, 1976. In the years 1969, 1970, 1971 and 1972 the direct costs for hospitalization of Mrs. Herman were $ 5,475, $ 5,986, $ 7,621.20 and $ 8,784, respectively. Of these amounts petitioner paid $ 720 per year with the balance paid by the State of New Jersey and the County of Essex, New Jersey. In addition, petitioner paid for incidental expenses for dental work and clothes. He visited his wife on numerous occasions during the period of her hospitalization but never discussed financial affairs or matters relating to the filing of Federal income tax returns. This was due to his wife's mental condition which on occasion resulted in acts of violence. In addition, during the course of her hospitalization *500 Mrs. Herman received extensive amounts of medication as well as electro-shock therapy which among other things affected her memory. Mrs. Herman was unaware of petitioner's filing income tax returns. She did not sign any of the returns filed for the taxable years 1953 through 1972 and at no time did Mrs. Herman file a separate return. Mrs. Herman did not file a separate return for the taxable year 1972 presumably because her gross income was less than $ 750. After Mrs. Herman was committed to the hospital, petitioner, in 1953, employed Mr. Philip Weinberg, a certified public accountant, who prepared petitioner's Federal income tax return for the year 1953. He informed Mr. Weinberg that his wife had been adjudicated insane and, therefore, unable to sign the return for 1953 which had been prepared as a joint return. Following this discussion with petitioner, Mr. Weinberg contacted someone at the Internal Revenue Service in an effort to determine if and what measures could be taken so that petitioner could file a joint return. Mr. Weinberg was informed that if he would state the exact facts surrounding petitioner's circumstances and attach the statement to the return it would probably *501 be sufficient to satisfy the requirements for filing a joint return. Accordingly, Mr. Weinberg attached the following statement to the return filed by petitioner for the taxable year 1953: Note: Because my wife is at present in an institution, I am unable to obtain her signature. However, this return is to be considered a joint return. I have signed her name. Petitioner continued to file his Federal income tax returns for subsequent years in the same manner. His wife's mental condition remained basically the same with varying degrees of improvement and relapses. Mrs. Herman was a beneficiary of her father's estate but the Superior Court of New Jersey, Chancery Division of Essex County, appointed a custodian of her share of the estate and ordered that her share be deposited with the clerk of the Superior Court due to her mental incompetence. The action with regard to this matter took place on October 27, 1961. Petitioner was never appointed guardian of Mrs. Herman. Petitioner instituted divorce proceedings on December 28, 1972. On March 5, 1973, the court in which the proceeding was pending ordered the appointment of a guardian ad litem for Mrs. Herman. Petitioner never *502 visited his wife after he filed his petition for divorce. On June 26, 1973, petitioner filed a Federal income tax return for the taxable year 1972 in the same manner he had followed in the past. Attached to this return was the following statement: Statement re: Missing signature of Celia Herman. This tax return is to be considered a joint return. My wife is ill and in an institution.I am unable to obtain her signature * * * Petitioner reported on this return taxable income in the amount of $ 265,082.66 of which $ 74.52 represented interest income derived from a savings account of Mrs. Herman. [2] On September 14, 1973, a judgment of divorce between petitioner and Mrs. Herman was granted. Mrs. Herman continued to be hospitalized and on February 3, 1975, was designated by the hospital as a voluntary patient. The hospital then released her from its custody on July 1, 1976. *503 Respondent conducted an audit of petitioner's Federal income tax returns for the taxable years 1969, 1970 and 1971. The focus of the audit did not involve a review of the joint status of the returns and respondent made no objection as to petitioner's election to file a joint return. Each return audited by respondent contained the statement regarding the condition of Mrs. Herman. The Commissioner, in his statutory notice of deficiency, determined that petitioner was not entitled to file a joint Federal income tax return for the taxable year 1972. OPINION Petitioner married Celia Herman in 1948 and for the taxable years 1948 through 1952 they filed joint Federal income tax returns. Petitioner was responsible for the preparation of these returns and at the appropriate time he requested Mrs. Herman to sign them. In 1953 Mrs. Herman was admitted to the Essex County Hospital Center (herein hospital) where she was diagnosed as paranoid schizophrenic. In January 1954 Mrs. Herman was adjudicated insane and ordered to remain at the hospital until her reason was restored. She remained at the hospital until her release on July 1, 1976. Following Mrs. Herman's admission to the *504 hospital, petitioner employed a certified public accountant and informed him about Mrs. Herman's mental condition. The accountant contacted someone at the Internal Revenue Service and inquired as to what procedure should be followed in filing a joint return for 1953 due to Mrs. Herman's condition. The accountant testified that he could not remember with whom he discussed this matter but stated that someone instructed him to attach a statement to the return describing the reason Mrs. Herman's signature was not on the return. The accountant prepared the return as a joint return and attached to the return was the following statement: Note: Because my wife is at present in an institution, I am unable to obtain her signature. However, this return is to be considered a joint return. I have signed her name. Petitioner continued to file "joint returns" for each taxable year up to and including the taxable year in issue in the same manner. During this period of time respondent conducted audits of petitioner's returns for the taxable years 1969, 1970 and 1971 regarding matters which did not include the propriety of the election to file joint returns. Petitioner visited Mrs. Herman on *505 numerous occasions during her hospitalization but never discussed matters relating to financial matters or filing income tax returns. The reason petitioner never discussed these topics with Mrs. Herman was due to her mental condition. In 1961 it was necessary to appoint a custodian to take responsibility for Mrs. Herman's interest received from her father's estate. On December 28, 1972, petitioner instituted a divorce proceeding against Mrs. Herman and sought the appointment of a guardian ad litem to protect her interests pending the final outcome of the proceedings. On March 5, 1973, the court appointed a guardian ad litem for Mrs. Herman. Petitioner ceased his visits with Mrs. Herman on December 28, 1972, but filed a Federal income tax return for the taxable year 1972, as he had done for the previous 19 years, on June 26, 1973. On September 14, 1973, petitioner's divorce was granted. Petitioner was never appointed guardian of Mrs. Herman. The first issue for our decision is whether respondent is estopped from determining that petitioner is not entitled to file a joint Federal income tax return for the taxable year 1972. Petitioner takes the position that because respondent *506 examined the income tax returns filed by petitioner in 1969, 1970 and 1971 without contesting their indicated joint status, respondent is estopped from determining that petitioner is not entitled to file a joint return for the taxable year 1972. Petitioner argues that the facts surrounding the filing of his return for 1972 are identical to those facts existing at the time of his filing the previous returns. In addition, petitioner contends that by filing returns for the taxable years 1953 through 1972 in a manner consistent with the directions of some employee of the Internal Revenue Service he justifiably relied upon respondent and, therefore, respondent is not in a position to question the return filed for the taxable year 1972. Respondent argues that his acquiesence in petitioner's filing income tax returns as joint returns in prior years does not prevent him from attacking the character of the return for the taxable year in issue. We agree with respondent.It is well settled that respondent cannot be estopped from asserting a position as in the instant case even though he raised no objection to similar circumstances in prior years. Easter v. Commissioner,338 F.2d 968 (4th Cir. 1964), *507 affg. a Memorandum Opinion of this Court, cert. denied 381 U.S. 912 (1965); Caldwell v. Commissioner,202 F.2d 112 (2d Cir. 1953), affg. a Memorandum Opinion of this Court; South Chester Tube Co. v. Commissioner,14 T.C. 1229 (1950). Likewise the fact that petitioner filed returns from 1953 through 1972 without respondent's objection as to their joint status is of no moment. Union Equity Cooperative Exchange v. Commissioner,58 T.C. 397, 408 (1972), affd. 481 F.2d 812 (10th Cir. 1973), cert. denied 414 U.S. 1028 (1973). In addition, respondent disagrees with petitioner's assertion that he justifiably relied upon the instruction of the Internal Revenue Service in preparing his returns for the taxable years 1953 through 1972 and argues that the facts in the instant case will not support petitioner's position. We agree.In an attempt to prove that he relied upon instructions from the Internal Revenue Service petitioner offered the testimony of his certified public accountant. However, his accountant's testimony was limited to the following: Q. When it came to signing the tax return, what transpired *508 between you and Mr. Herman? A. Well, as I understood it, Mr. Herman -- we'd prepared a joint tax return. Mr. Herman told me that his wife was ill. That she was in an institution.That he could not get her signature. And to the best of my recollection, under the circumstances, I didn't know the procedure at the exact moment, and I believe by telephone information from the department, it was suggested, or I was directed to -- I wouldn't say which specifically -- that the exact facts be stated in a statement attached to the return, and have Mr. Herman sign it, and that it would probably be okay to file as a joint return. * * *
Q. Can you recall who you spoke to at the Internal Revenue Service? A. I have no notation of who I spoke to, no. This testimony falls short of the mark in establishing justifiable reliance. Not only did petitioner's accountant fail to identify the official with whom he spoke but by his own testimony demonstrated that he had no basis upon which to assure the filing of an acceptable joint return. To the contrary, the most petitioner could expect was a probability of approval. Accordingly, we hold that respondent is not estopped from challenging *509 the filing status of petitioner's income tax return for the taxable year 1972. The next issue for our decision is whether the Federal income tax return filed by petitioner for the taxable year 1972 constitutes a joint return within the meaning of section 6013, Internal Revenue Code of 1954, as amended. Respondent's determination that the return filed by petitioner for the taxable year in issue was not a joint return is presumptively correct and petitioner has the burden of proving that such determination is erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. It is clear and without dispute that in order for petitioner to carry his burden of proof he must demonstrate by a preponderance of the evidence that he and Mrs. Herman intended to file a joint return for the taxable year 1972. Federbush v. Commissioner,34 T.C. 740 (1960), affd. 325 F.2d 1 (2d Cir. 1963); Bour v. Commissioner,23 T.C. 237 (1954). Likewise, our decision in this regard must be based upon all the facts and circumstances surrounding petitioner's return. Helfrich v. Commissioner,25 T.C. 404 (1955). *510 Petitioner takes the position that Mrs. Herman's intent to file jointly with him for the taxable year 1972 is evident from the fact that she customarily signed the tax returns filed by petitioner from 1948 through 1952, a time prior to her commitment to the hospital for mental care. Petitioner argues that the absence of Mrs. Herman's signature on the return filed for 1972 does not in and of itself negate her intent to file a joint return. In so arguing he relies upon Abrams v. Commissioner,53 T.C. 230 (1969); Federbush v. Commissioner,34 T.C. 740 (1960), affd. 325 F.2d 1 (2d Cir. 1963); Kann v. Commissioner,18 T.C. 1032 (1952), affd. 210 F.2d 247 (3d Cir. 1953); and Howell v. Commissioner,10 T.C. 859 (1948), affd. 175 F.2d 240 (6th Cir. 1949). We agree that Mrs. Herman's signature or lack thereof on the tax return in issue is not crucial in our decision. However, we are not convinced from the record before us that Mrs. Herman's intention to file a joint return for 1972 carried over from the years prior to her institutionalization, as petitioner argues. The fact that *511 petitioner filed returns for 1953 through 1972 with a statement attached to the returns declaring his wife was unable to sign the returns due to her mental condition does not prove Mrs. Herman's intentions with respect to the taxable year in issue. We have thoroughly examined the hospital records which contain the medical history of Mrs. Herman's treatment during the 23-year period she was under the care of the hospital. From this examination we are convinced that she was an incompetent and unable to manifest an intention to file a joint return with petitioner for the taxable year in issue.Moreover, the fact that a guardian ad litem was appointed to represent Mrs. Herman's interests pending the final outcome of divorce proceedings instituted by petitioner further demonstrates her inability to join with petitioner in filing the return for 1972. Petitioner further asserts that he acted as Mrs. Herman's agent when he prepared and filed the return in issue. We cannot agree with petitioner because Mrs. Herman, due to her mental condition, was at all times relevant unable to either authorize petitioner to so act, or manifest any intention that petitioner act as her agent when filing *512 the return in issue. [3] See Restatement (Second) of Agency, sec. 22 (1957). Accordingly, we hold that petitioner has failed in his burden of proving that Mrs. Herman intended to file a joint Federal income tax return for the taxable year 1972.Due to concessions of the parties, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. During the time she was hospitalized Mrs. Herman had no other income with the exception of the following: (1) accumulated interest from 1961 to 1976 in the amount of $ 1,934.70 generated by the proceeds from her father's bequest; and (2) dividends from insurance policies for the taxable years 1969 and 1970 in the respective amounts of $ 20.17 and $ 23.02.↩
3. The facts in the instant case are distinguishable from those set forth in Rev. Rul. 56-22, 1956-1 C.B. 558↩, wherein the Commissioner held that a wife who was managing her husband's business during his mental incompetency before he was adjudged legally incompetent could file a valid return for the husband.In the instant case petitioner did not manage any of his wife's property; it was held by the Clerk of the Superior Court. Mrs. Herman had been adjudged insane 18 years before the return for 1972 was filed. Petitioner sued Mrs. Herman for divorce prior to the close of the taxable year before us and a guardian ad litem was appointed for Mrs. Herman before petitioner filed the return involved.