ROBERT M. MCRAE AND BARBARA MCRAE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McRae v. Commissioner
Docket No. 17147-82
United States Tax Court
T.C. Memo 1988-374; 1988 Tax Ct. Memo LEXIS 404; 55 T.C.M. (CCH) 1560; T.C.M. (RIA) 88374; August 15, 1988
Roy B. Moore, for Robert M. McRae. John C. Green, for Barbara McRae. Steven M. Roth, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: This case was assigned for trial or other disposition to Special Trial Judge Helen A. Buckley pursuant to section 7456(d) (now designated section 7443A(b) of the Internal Revenue Code of 1986) and Rules 180 and 181. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE BUCKLEY, Special Trial Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Robert and Barbara McRae:
Taxable
Income Tax
Year Ended
Deficiency
12/31/74
$    193.33
12/31/76
12,124.30
12/31/77
23,805.00
12/31/78
13,366.00
Robert McRae:
12/31/79
$ 32,951.00
*406 Some of the facts have been stipulated and they are so found. [2] Petitioners were husband and wife during the taxable years here involved. They were divorced in 1979. When they timely filed their petition herein, Robert M. McRae resided at Vernal, Utah, and Barbara McRae (hereafter "petitioner") resided at Salt Lake City, Utah. Their Federal tax returns for the years at issue were filed at Ogden, Utah. The issue which we consider herein is whether petitioner Barbara McRae should be relieved of any income tax liability attributable to disallowed loss deductions in regard to purported rentals of videotapes, as well as the disallowance of investment credits and carrybacks for the years 1974 through 1978. Barbara McRae does not contest the liability amount. She does contend, however, that she is entitled to innocent spouse *407 treatment under the provisions of section 6013(e) of the Code. All of the determinations made by respondent, with minor exceptions, pertain to investments in master videotapes by petitioner Robert McRae with Metro Productions, Inc., of Los Angeles, California. For purposes of determining the innocent spouse issue, respondent and Barbara McRae have stipulated that the deductions and credits had no basis in fact or law. Barbara and Robert McRae were married on June 1, 1956. They separated on April 15, 1979, and Barbara McRae was awarded a final divorce on October 18, 1979. Petitioners had two children, Kerrie and Michael. Robert McRae is an attorney who practiced in partnership in Salt Lake City in years preceding the taxable years. In either 1974 or 1975 he opened a part-time law office for the partnership in Vernal, Utah, about 170 miles away from petitioners' home in Salt Lake City. He spent less and less of his time at home and more of his time in Vernal devoting himself to his law practice and to a farm which he had purchased there. These factors were directly related to the eventual divorce of petitioners. During their married life, Barbara McRae devoted herself *408 to raising the children and maintaining the household. She had no knowledge of the income earned by Robert McRae until the time of the divorce. She was not consulted or informed about business matters, investments, or about the preparation and filing of the couple's income tax returns. Robert McRae did not discuss tax matters with his wife. She simply expected him to take care of such matters. He saw to it that tax returns were filed. During 1974, 1976, 1977, and 1978, Robert McRae had joint returns prepared. He did not present them to petitioner but rather had someone in his office sign her name. Barbara McRae knew that there was a responsibility to file returns but simply assumed that "he just took care of it." Barbara did not work outside the home until March of 1978 when she commenced working for Salt Lake City in the court system. She gave her husband the form W-2 she received, expecting him to take care of the returns. She did not sign any of the returns in question. Barbara McRae took no part in the acquisition of the videotapes and if she knew anything about them at all it was no more than through dinner table conversation. The petitioners led a life characterized *409 by Mrs. McRae as "comfortable." She maintained a checking account out of which she paid the household bills and the mortgage. She was not given a regular allowance, but requested funds from her husband when she needed them. She estimated that she received approximately $ 1,200 to $ 1,500 per month from her husband. During their marriage petitioners took only two family vacations. As a result of the divorce decree, Barbara McRae was awarded a condominium apartment with an equity value of approximately $ 37,000, household furnishings of about $ 15,000, and an automobile worth $ 9,000 to $ 10,000. She received an interest in a realty partnership from which she realized $ 50,000 on sale. She received as a partial property settlement award $ 148,750, payable without interest in monthly installments of $ 1,250 each. She also was entitled to receive $ 1,250 monthly alimony for ten years and one month, subject to her remarriage or death. Barbara McRae did remarry. Robert McRae received the assets connected with his law practice, the Vernal farm, and various other items including the videotape investments. Lastly, Robert McRae was ordered in the divorce decree to pay various *410 liabilities of the parties "including any tax liabilities." We find that Barbara McRae was an innocent spouse within the meaning of section 6013(e) for the 1976, 1977, and 1978 tax years. The general rule is that when a joint income tax return is filed, the parties are jointly and severally liable for the amount of tax due. Sec. 6013(d)(3). Section 6013(e), "the innocent spouse" provision, however, provides an exception. Section 6013(e), as amended by section 424(a) of the Tax Reform Act of 1984, Pub. L. 98-368, 98 Stat. 494, 801-802, [3] provides in part: (e) Spouse Relieved of Liability in Certain Cases. -- (1) In General. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, *411 it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. * * *
A substantial understatement of tax may be attributable to items omitted from gross income or to deductions claimed for which there is no basis in fact or law. Sec. 6013(e)(2). Petitioner has the burden of proving that she has satisfied each statutory prerequisite of section 6013(e)(1). Sonnenborn v. Commissioner,57 T.C. 373, 381-383 (1971); Rule 142(a). Joint Return
Petitioner Barbara McRae did not sign *412 any of the returns in question. She did not review them or have the contents thereof explained to her in connection with her filing. It was not until the divorce proceedings that she saw any of the returns, and not until then that she learned of her husband's net income from his law practice and his investments. Petitioner knew of her obligation to file returns, she knew her husband was filing them, and she never made any attempt to disavow the returns as filed. Indeed, she impliedly, by invoking the provisions of section 6013(e) in this action, admits that she filed joint returns and we so hold. Petitioner acquiesced in and gave tacit consent to the filing of joint returns. The fact that she did not sign the returns, under the facts in this case, does not require a different result. Estate of Campbell v. Commissioner,56 T.C. 1 (1971); Abrams v. Commissioner,53 T.C. 230 (1969). Substantial Understatement
Section 6013(e)(1)(B) requires that the understatement of tax must be "substantial." That term is defined as any understatement which exceeds *413 $ 500. Sec. 6013(e)(3). The year 1974, in which the deficiency is $ 193.33, accordingly is a year in which the understatement is not substantial, so that as to that year, petitioner cannot meet the statutory requirements for relief. The understatement is substantial for 1976, 1977 and 1978. Percentage Requirement
Petitioner must also meet the requirement that her liability [4] must exceed specified percentages of her adjusted gross income for her preadjustment year. Sec. 6013(e)(4). When the spouse's adjusted gross income is more than $ 20,000, that term is defined to be a liability for understatement in a taxable year which is, inter alia, greater than 25 percent of the spouse's adjusted gross income for the preadjustment year. Sec. 6013(e)(4)(B). "Preadjustment year" means the most recent taxable year of the spouse ending before the date the deficiency notice is mailed. Sec. 6013(e)(4)(C). The deficiency notice to petitioners was dated April 14, 1982. Therefore, petitioner *414 Barbara McRae's preadjustment year was 1981. Petitioner, during the period ended December 31, 1981, was married to Dennis R. Thayne. In such an instance, the innocent spouse provisions of the Code require the inclusion of the spouse's adjusted gross income for purposes of determining whether the percentage requirement is satisfied. Sec. 6013(e)(4)(D). Petitioner and Mr. Thayne filed a joint Federal income tax return for the 1981 year. Their combined adjusted gross income for that year, after audit, was $ 39,719; 25 percent of that amount is $ 9,929.75. Thus, the percentage requirements of paragraph 4 are met for the years 1976, 1977, and 1978. Grossly Erroneous Items
Section 6013(e)(2) provides that the term "grossly erroneous items" means, with respect to any spouse -- (B) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law. Respondent and petitioner have stipulated that the deductions and credits taken in regard to *415 the videotape masters had no basis in fact or law. Thus, this prong of the test has been met. Lack of Knowledge of Substantial Understatement
Petitioner Barbara McRae had no knowledge of the substantial understatement. The test which we apply in this regard, however, requires not only lack of knowledge, but a showing that petitioner had no reason to know of the substantial understatement. In determining whether petitioner had reason to know of the grossly erroneous items relating to deductions claimed on her joint return, we apply the same test used in innocent spouse cases where items of income were omitted from the return. The standard is "whether a reasonable person under the circumstances of the taxpayer at the time of signing the return could be expected to know of the omissions." Shea v. Commissioner,780 F.2d 561, 566 (6th Cir. 1986), affg. on this issue a Memorandum Opinion of this Court. (Emphasis in the original.) Under the unusual circumstances here, where the returns were never given to petitioner to sign, she obviously did not have the opportunity *416 to question any item in the return. The testimony in the record indicates that petitioner, if she even knew of the acquisition of the videotapes, certainly knew nothing of the tax treatment accorded them in the joint tax returns. We do not believe, given her ignorance of the family financial affairs, that she knew, or ought to have known of the understatements of tax due to the Metro Production videotapes. Further, under the circumstances of her marriage, where she saw her husband infrequently because of his Vernal law practice, she could not be expected to know about the claimed videotape deductions and credits. Test of Inequity
Lastly, we consider, under all of the facts and circumstances of this case, whether it would be inequitable to hold petitioner liable for these taxes and interest. Prior to the 1984 amendment to the innocent spouse provisions, the statute specifically required a determination whether the spouse claiming relief from tax significantly benefitted from the omissions from income. The statute now, however, does not so specifically refer. Nevertheless, it is our view that *417 one of the considerations to be given in a determination of inequitability is whether the spouse in fact had received substantial benefits from the understatement of tax. Purcell v. Commissioner,86 T.C. 228 (1986), affd. 826 F.2d 470 (6th Cir. 1987). We note that such benefit may be found from transfers of property in later years, but not to the extent that funds or property transferred constitute reasonable support. Terzian v. Commissioner,72 T.C. 1164 (1979). We have carefully considered the record herein, including the property petitioner received in the property settlement, alimony payments, and her standard of living while married to Mr. McRae, and under all the facts and circumstances of this case we conclude that it would be inequitable to hold petitioner liable for the underpayment of tax for the years 1976, 1977 and 1978. As to those years, petitioner was an innocent spouse. An appropriate order will be issued.
Footnotes
1. All subsequent section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided. ↩
2. A written stipulation for trial, with exhibits 1-A through 25-Y was filed. In addition, petitioner Barbara McRae and respondent made oral stipulations with exhibits 26-Z through 28-AB placed into the record. Subsequently, petitioner Barbara McRae's motion to reopen the record was granted and additional documentary evidence submitted by her was filed. ↩
3. The amendments to section 6013↩ are applicable retroactively to any tax years to which the 1939 or 1954 Code is applicable except to years closed by statutes of limitation or by res judicata. Pub. L. 98-369, sec. 424, 98 Stat. 801; H. Rept. 98-432, Pt. 2, 1401, 1503 (March 5, 1984). 4. Liability for this purpose includes additions to tax and interest with the tax deficiency. ↩