ANGELINA G. ALIOTO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Alioto v. Commissioner
Docket No. 6471-85
United States Tax Court
T.C. Memo 1994-51; 1994 Tax Ct. Memo LEXIS 52; 67 T.C.M. (CCH) 2133; February 9, 1994, Filed *52 Decision will be entered for respondent in the reduced amount of $ 486,403. For petitioner: Lawrence G. Papale. For respondent: Mary E. Wynne. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, by a statutory notice of deficiency, determined a Federal income tax deficiency in the amount of $ 576,682 and an addition to tax under section 6653(a) [1] in the amount of $ 28,834 for petitioner and her former husband, Joseph L. Alioto (Joseph), for their 1977 taxable year. Respondent also determined, by a statutory notice of deficiency, a Federal income tax deficiency in the amount of $ 452,535 and an addition to tax under section 6653(a) in the amount of $ 22,627 for Joseph and Kathleen S. Alioto (Kathleen) for their 1978 taxable year. After protracted negotiations, a reduced settlement was reached between respondent, *53 Joseph, and Kathleen regarding the above-mentioned deficiencies and additions to tax. Petitioner refused to participate in the aforementioned settlement, and the present case regarding petitioner's 1977 income tax liability was severed for separate resolution. On January 6, 1992, respondent filed a motion to have a decision entered determining a deficiency in petitioner's 1977 tax liability in the amount of $ 486,403 based on the reduced settlement entered between respondent and Joseph for that year. Petitioner does not question the amount of the reduced settlement between respondent and Joseph nor does she contest the amount of the deficiency determined for 1977. The only issues for consideration are: (1) whether petitioner signed and/or consented to filing a joint income tax return with Joseph for the 1977 taxable year; and (2) whether respondent is estopped from collecting the tax deficiency from petitioner due to an indemnification clause in the couple's marital settlement agreement. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation of facts and attached exhibits are incorporated by this reference. At the time of filing the petition in this case, *54 petitioner resided in San Francisco, California. Petitioner and Joseph separated in 1975. The couple remained married, however, until sometime in 1978, when their marital relationship was dissolved. For her 1976 taxable year, petitioner filed an income tax return designating the filing status "Married filing separately". Petitioner's separate return for 1976 was prepared by an accountant, John B. Jones (Jones), and mailed to the Internal Revenue Service on October 17, 1977. A statement labeled "Rider" was attached to the return indicating that petitioner originally anticipated filing a joint return with Joseph for the 1976 taxable year. The rider also contained an indication that petitioner's separate return was hastily prepared only after she was informed at the time of the filing deadline that Joseph did not intend to file a joint return with her for 1976. According to respondent's records, the only return filed for petitioner's 1977 taxable year was a return filed in her name and in Joseph's name with the filing status designated "Married filing joint return". The 1977 joint return was prepared by an accountant, Grant R. Caldwell (Caldwell), and received by the Internal *55 Revenue Service on October 18, 1978. The 1977 joint return contains signatures bearing the names "Angelina G. Alioto" and "Joseph L. Alioto". Joseph's signature appears directly above the statement "Spouse's signature (if filing jointly, BOTH must sign even if only one had income)". Shortly after the 1977 joint return was filed, petitioner and Joseph entered into a "Settlement Agreement", dated December 11, 1978, pursuant to their marital dissolution. Under one provision of the agreement, Joseph, in exchange for certain properties held by petitioner, agreed to indemnify petitioner against "All tax liabilities, state and federal, which may be or have already been established for the year[s] 1976 and 1977 and all years previous thereto." Under the settlement agreement, petitioner and Joseph also agreed "to file amended federal and state income tax returns for the calendar year 1976". Petitioner and Joseph both signed the settlement agreement. In accordance with petitioner and Joseph's marital settlement agreement, an amended return for the couple's 1976 taxable year was submitted to the Internal Revenue Service on November 13, 1979. The amended return indicates that the filing *56 status for the couple's 1976 taxable year was being changed from "Married filing separately", as reported on petitioner's original 1976 return, to "Married filing jointly". The amended 1976 return was prepared by Caldwell and contains petitioner's signature and Joseph's signature. On September 14, 1981, an internal revenue agent, Raymond Casabonne (Casabonne), went to petitioner's home and secured her signature on a Form 872, Consent to Extend the Time to Assess Tax. The Form 872 extends the period for assessment of petitioner and Joseph's 1977 taxable year to December 31, 1982. Petitioner executed the Form 872 and did not intimate to Casabonne that she was not a signatory to the 1977 joint return with Joseph. Petitioner signed two additional Forms 872, in October 1982 and on November 9, 1983, extending the 1977 assessment period to December 31, 1983, and December 31, 1984, respectively. Again petitioner signed the extension forms without giving any indication that she did not sign the 1977 joint return with Joseph. A statutory notice of deficiency concerning petitioner and Joseph's 1977 taxable year was sent to petitioner at her home address on December 28, 1984. The deficiency *57 notice was addressed to "Joseph L. Alioto and Angelina G. Alioto" and indicated that the deficiency was being determined for the couple's 1977 "joint" return. Petitioner was not included in the statutory notice of deficiency which was sent on the same day to Joseph and Kathleen determining a deficiency in their 1978 Federal income tax. Timely petitions were filed on behalf of petitioner, Joseph, and Kathleen denying all adjustments in respondent's deficiency notices for tax years 1977 and 1978. Settlement negotiations ensued shortly thereafter wherein petitioner's, Joseph's, and Kathleen's positions were represented by the same counsel. Throughout the extensive settlement negotiations, and until 1992, petitioner did not contend that she had not signed or consented to the 1977 joint return. Petitioner did, however, sign a document titled "Partial Stipulation of Settled Issues" which was filed with this Court on June 13, 1988. The partial stipulation outlines a plan for settlement of the deficiencies for both the 1977 and 1978 taxable years and includes a provision whereby the parties agreed to enter a statutory closing agreement in accordance with the perceived settlement plan. *58 More than one year after the partial stipulation was filed, the promised closing agreement was not forthcoming, and the parties were called to appear before this Court on December 4, 1989, to report on the ongoing status of the settlement negotiations regarding their 1977 and 1978 tax liabilities. At that proceeding, petitioner appeared on her own behalf and requested separate counsel for the first time. Shortly after that proceeding, a joint settlement document was filed with this Court indicating that respondent had reached an agreement with Joseph and Kathleen regarding the Federal income tax deficiencies determined for their 1977 and 1978 taxable years. Petitioner refused to join the settlement agreement, and her case was severed for separate resolution by an order of this Court dated May 25, 1990. In the ensuing 19 months, petitioner continued to refuse to settle her case, and yet, she did nothing to move the matter forward or to prosecute her cause. Petitioner instead attempted to have Joseph pay the tax in accord with their divorce agreement. Finally, in January 1992, respondent moved for a decision in this case consistent with the settlement reached between respondent *59 and Joseph regarding the same 1977 joint return at issue here. Petitioner thereafter obtained counsel and filed an objection to respondent's motion for decision with this Court on April 16, 1992. In her objection to respondent's motion for decision, petitioner asserted for the first time that she did not sign or consent to filing the 1977 joint return. OPINION A husband and wife who file a joint return are jointly and severally liable for the tax liability. Sec. 6013(d)(3). Petitioner claims that she is not liable because she did not sign or consent to the 1977 joint return. The presence of a signature alone on an income tax return constitutes a prima facie case that it was signed by the named signatory. Sec. 6064. Petitioner has the burden of proving that the signature bearing her name on the 1977 joint return with Joseph is not her own and that she did not consent to filing the joint return with Joseph for 1977. Rule 142(a). The issue here is a question of fact. Petitioner, in an attempt to meet her burden, offered her self-serving testimony. The record, however, is replete with evidence contradicting petitioner's testimony. We hold petitioner to be jointly liable *60 for the 1977 income tax deficiency. Petitioner's assertion that she did not sign or consent to a 1977 joint return 13 years after the fact appears to be a tactical afterthought without substance. This Court has previously denied such delayed attempts to disavow a joint return. Estate of Campbell v. Commissioner, 56 T.C. 1, 14 (1971) (late attempt to discredit joint return "appears to us to be merely an afterthought"); Federbush v. Commissioner, 34 T.C. 740, 755 (1960), affd. per curiam 325 F.2d 1 (2d Cir. 1963) ("the idea of disavowing the returns as joint returns was an afterthought"); O'Connor v. Commissioner, 412 F.2d 304, 309-310 (2d Cir. 1969), affg. in part, revg. in part and remanding T.C. Memo. 1967-174 (finding of joint returns upheld where 15-year delay occurred before taxpayers challenged Commissioner's view of the returns). Petitioner should have been aware that her 1977 tax liability was under investigation when Revenue Agent Casabonne visited her at her home on September 14, 1981, to secure her signature on a Form 872, *61 Consent to Extend the Time to Assess Tax. This was the first of three Form 872 extensions, all addressed to petitioner and Joseph, and all applying to the 1977 taxable year, that petitioner admits signing between September 1981 and November 1983. Nevertheless, Casabonne testified that on his September 14, 1981, visit to petitioner's home, petitioner never intimated that she did not sign a joint return with Joseph for 1977. In response to the notice of deficiency which was mailed in December 1984, a petition was filed with this Court by counsel representing Joseph, Kathleen, and petitioner. The petition does not assert that the 1977 joint return was not signed by petitioner. Nor was that assertion made during the various settlement negotiations that took place over the next several years, throughout which petitioner, Joseph, and Kathleen were all represented by the same counsel. It appears that petitioner allowed her interests to be represented by counsel together with Joseph's and Kathleen's until it became clear that Joseph was either unable or unwilling to pay the 1977 tax liability. It was not until 1992, after respondent had entered a separate settlement with Joseph and *62 petitioner realized that she might be personally liable for the 1977 tax deficiency, that petitioner first asserted that she did not sign the 1977 joint return. As stated above, the lateness of petitioner's assertion, coming 13 years after the joint return was filed and only a few months prior to trial, leads us to believe that that assertion is merely an afterthought. Petitioner's claim that she did not sign or consent to filing a joint return with Joseph for 1977 is undermined by the lack of any records or credible evidence indicating that petitioner filed a separate return for 1977. A spouse's failure to file a separate return has been considered an indication that the spouse "tacitly consented" to the filing of a joint return, even where the joint return was not signed by the spouse. Abrams v. Commissioner, 53 T.C. 230, 234 (1969); Heim v. Commissioner, 27 T.C. 270, 273 (1956), affd. 251 F.2d 44 (8th Cir. 1958); Carroro v. Commissioner, 29 B.T.A. 646, 650 (1933). At trial, petitioner claimed that Jones, the accountant who prepared petitioner's original 1976 *63 separate return, also prepared a separate return for her 1977 taxable year. Jones, however, could not recall preparing a separate 1977 return for petitioner. In the absence of any credible evidence indicating that petitioner filed a separate return for 1977, it would appear that petitioner intended or consented that the 1977 joint return be her return. Joseph's promise to indemnify petitioner for all tax liabilities relating to the 1976 and 1977 tax years, appearing in the marital settlement agreement signed by both petitioner and Joseph in December 1978, is also inconsistent with petitioner's assertion that she did not file a joint return with Joseph for 1977. It is less likely that Joseph would agree to pay petitioner's tax liability for a year in which petitioner did not file a joint return with him. In addition, petitioner and Joseph agreed to file an amended joint return for 1976, a year in which they both originally filed separate returns. It is evident that Joseph's indemnification of petitioner for her 1976 tax liability was to be based on the couple's joint return for 1976, as amended. No similar agreement was entered regarding the couple's 1977 tax year, leading to *64 the conclusion that petitioner and Joseph were under the impression that they had already filed a joint return for that year. Finally, petitioner has failed to convince us that the signature bearing her name on the 1977 joint return was forged. Petitioner has admitted signing several documents which are part of the record in this case, including her original 1976 separate income tax return, the marital settlement agreement, and the three Form 872 extensions applicable to petitioner's 1977 tax liability. Our visual examination and comparison of the various signatures does not reveal any variation or differences between those admitted and those denied by petitioner. Petitioner admitted at trial that the signature on the 1977 joint return resembles her own. Petitioner did not introduce expert testimony or the testimony of anyone else familiar with her signature. We did not find petitioner's denial of her signature to be credible. Since petitioner has not met the burden of proving that the signature bearing her name on the 1977 return is not her own or that she did not consent to the filing of the return, we hold the 1977 return to be a valid joint return. We further hold petitioner *65 jointly and severally liable under section 6013(d)(3) for the deficiency determined on the 1977 joint return and reject the assertion that the indemnification clause in the marital settlement agreement bars respondent from collecting the deficiency from petitioner. Liability cannot be averted "through the simple medium of an agreement to which respondent is not a party." Pesch v. Commissioner, 78 T.C. 100, 129 (1982). It is clear that petitioner's concern here is her right of contribution from Joseph. Contribution is a matter to be resolved under State laws. In order to reflect the concession of respondent to a portion of the deficiency and the addition to tax under section 6653(a), Decision will be entered for respondent in the reduced amount of $ 486,403. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩